UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CATHERINE L. P.,<br><br>               Plaintiff,<br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | CASE NO. 3:24-CV-5099-DWC<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of her applications for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB").[1] After considering the record, the Court finds Plaintiff has not shown that the rebuttal evidence submitted by her counsel constituted "significant probative evidence" of an inconsistency requiring resolution. Therefore, the Court concludes the Administrative Law Judge ("ALJ") did not err in finding that Plaintiff was not disabled and affirms the decision of the Commissioner of Social Security ("Commissioner") to deny benefits.

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 1

I.     **Factual and Procedural History**

Plaintiff filed claims for DIB and SSI on September 30, 2021, alleging disability beginning on April 1, 2010. Dkt. 7, Administrative Record ("AR") 213–35. Her applications were denied at the initial level and on reconsideration. AR 64–73. She requested a hearing before an ALJ, which took place on March 8, 2024. AR 36–57, 133–37. Plaintiff was represented by counsel at the hearing. *See* AR 36. The ALJ issued an unfavorable decision denying benefits, and Plaintiff requested that the Appeals Council review the ALJ's decision. AR 7–8, 14–35, 208–09. Plaintiff challenged the testimony of a vocational expert ("VE") regarding job number estimates and submitted rebuttal evidence obtained by Plaintiff's counsel showing lower job numbers. AR 376–84. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1–6. Plaintiff appealed to this Court. *See* Dkts. 1, 3.

II.    **Standard of Review**

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

III.   **Discussion**

Plaintiff argues the ALJ erred at step five of the sequential evaluation by accepting testimony from the VE that was not supported by substantial evidence. Dkt. 9 at 3. Defendant

1   does not dispute that Plaintiff adequately preserved this challenge by raising the rebuttal of the

2   job numbers before the Appeals Council. Dkt. 13 at 5.

3        If, over the first four steps of the sequential evaluation, a claimant establishes that she

4   suffers from severe impairments that prevent her from doing any work she has done in the past,

5   she "has made a prima facie showing of disability." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th

6   Cir. 1999). At step five, the burden then shifts to the Commissioner to show that, given

7   Plaintiff's age, educational and vocational background, and residual functional capacity, Plaintiff

8   can perform substantial gainful work in the national economy. *Pinto v. Massanari*, 249 F.3d 840,

9   844 (9th Cir. 2001).

10        To make this determination, an ALJ may rely on the testimony of a VE—a professional

11   "who, through their training and experience, [has] 'expertise and current knowledge of working

12   conditions and physical demands of various jobs; knowledge of the existence and numbers of

13   those jobs in the national economy; and involvement in or knowledge of placing adult workers

14   with disabilities into jobs.'" *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022) (quoting

15   *Biestek*, 587 U.S. at 100). Because "'[a] VE's recognized expertise provides the necessary

16   foundation for his or her testimony[,]' . . . at least in the absence of any contrary evidence, a VE's

17   testimony is one type of job information that is regarded as inherently reliable[.]" *Buck v.*

18   *Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) (quoting *Bayliss*, 427 F.3d at 1218). "Given its

19   inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in

20   the national economy that a claimant can perform is ordinarily sufficient by itself to support an

21   ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020).

22        But "VE testimony is not incontestable." *Buck*, 869 F.3d at 1051. The Ninth Circuit has

23   "held that—as with any other inconsistency in record evidence—the ALJ may have a duty to

24

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 3

address" a conflict between the VE's job number estimates and the claimant's job number estimates "where the purportedly inconsistent evidence is both significant and probative, as opposed to 'meritless or immaterial.'" *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023) (quoting *Kilpatrick*, 35 F.4th at 1193–94).

In *Buck*, the Ninth Circuit held the ALJ had an obligation to resolve a dispute over the number of representative jobs the claimant could perform when "the vast discrepancy between the VE's job numbers and those tendered by Buck, presumably from the same source, [was] simply too striking to be ignored." 869 F.3d at 1052. Similarly, the Ninth Circuit found remand was appropriate when a plaintiff, "using a data source and methodology frequently relied on by the SSA" and "the same methodology as that used by the VE[,]" produced "job estimates [that] differed substantially from those of the VE." *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022).

However, the Ninth Circuit has found that conflicting job numbers did not constitute "significant probative evidence" when plaintiff's counsel "did not replicate the VE's same methodology[,]" "had no identified expertise in calculating job figures in the national economy[,]" and used obviously questionable methodology to produce the estimates. *Kilpatrick*, 35 F.4th at 1194. Even when plaintiff's counsel allegedly used the same software program as the VE to obtain the conflicting job numbers, the Ninth Circuit found the evidence was not probative when it failed to provide "information about how the job numbers were produced, other than the name of the software program used[,]" "establish that the attorney replicated a methodology that was set forth by the VE at the hearing[,]" or "provide the interpretation necessary to make the [raw data] meaningful to a court." *Wischmann*, 68 F.4th at 507.

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 4

At Plaintiff's hearing, the ALJ asked a VE whether there was work that a hypothetical individual with Plaintiff's age, education, work history, and limitations could perform. AR 52. The VE identified three potential occupations: final assembler for optical goods (DOT 713.687-018), with 59,840 positions nationally; touch-up screener (DOT 726.684-110), with 35,200 positions nationally; and eyeglass frame polisher (DOT 713.684-038), with 21,850 positions nationally. AR 53. Plaintiff's counsel inquired about the VE's basis for these job number estimates:

> COUNSEL: Mr. Corbin, do you usually have a program for your job, like Job Browser Pro or U.S. Publishing?
>
> VE: Can you repeat that?
>
> COUNSEL: What's the source for your job numbers[?]
>
> VE: Oh, okay; thank you. Multiple sources. Department of Labor, Bureau of Labor and Statistics, collaboration with head economists in each state that deals with employment numbers, also collaboration with other VEs in the nation.
>
> COUNSEL: Do you use any kind of program like Job Browser Pro or U.S. Publishing?
>
> VE: I do. I do utilize the printing of Job Browser Pro, 1.7; yes.
>
> COUNSEL: I have no further questions, Your Honor.

AR 54–55. Based on the testimony of the VE, the ALJ concluded there were jobs existing in significant numbers in the national economy that Plaintiff could perform and found Plaintiff not disabled. AR 28.

Plaintiff's request for Appeals Council review of the ALJ's decision included a memorandum challenging the VE's testimony regarding the number of positions for each of the representative occupations the VE identified. AR 376–78. Attached to the memorandum were "reports from Job Browser Pro on the three identified jobs," showing "only 2,247 positions total

in the national economy—not the 115,000 positions that the ALJ would have assumed based on the VE testimony." AR 377. Plaintiff's counsel stated he generated the reports in June 2023 "by entering the DOT code into the program, with no filters, and using the program's built-in option to generate a DOT specific estimate of job numbers." *Id.*

Even if, as Plaintiff argues, "presumably Plaintiff and the VE began from the same place" (Dkt. 14 at 2), Plaintiff has not shown that her attorney replicated the same methodology used by the VE to determine the estimated job numbers. The VE testified that he used "multiple sources" to determine job numbers, including but not limited to Job Browser Pro. AR 55. As the Ninth Circuit has noted, "SkillTRAN's Job Browser Pro software is meant to assist a VE in performing a complex matching exercise of various sources of information from official and private sources[.]" *Wischmann*, 68 F.4th at 507. "VEs may use a wide range of data sources and methodologies to generate job-number estimates[,]" and, "[a]lthough a VE may be cross-examined during the proceedings about the data sources or methodologies underlying her job-number estimates, there is no requirement that a VE disclose the primary data underlying the estimates prior to, during, or after the hearing." *White*, 44 F.4th at 834–45.

Here, although Plaintiff used a more reliable methodology and provided more information about how the job numbers were produced than the plaintiffs in *Kilpatrick* and *Wischmann*, the VE used "multiple sources" to determine job numbers, while Plaintiff's counsel presented reports generated from only one source, Job Browser Pro. Therefore, Plaintiff's rebuttal evidence does not replicate the methodology that was set forth by the VE at the hearing. Moreover, like the plaintiffs in *Kilpatrick* and *Wischmann*, Plaintiff has not supported her job numbers with the same expertise of someone experienced in calculating job figures in the national economy. Plaintiff has not provided the interpretation necessary to make the raw data

she submitted meaningful to the court. *See Kremlingson v. Saul*, 800 F. App'x 531, 532–33 (9th Cir. 2020) (unpublished) ("Kremlingson provided to the Appeals Council only her lay interpretation of various numbers she found online and of the vocational expert's data. Her data and analysis here are insufficient to preclude the agency from relying on the vocational expert's testimony.").

Thus, Plaintiff has not shown that her rebuttal evidence constituted significant probative evidence of a conflict. The ALJ was entitled to rely on the inherent reliability of the VE's testimony in making the step five determination, and substantial evidence supports the ALJ's decision.

## IV.   Conclusion

Based on the foregoing reasons, the Court hereby finds the ALJ did not err in determining that Plaintiff is not disabled, and therefore affirms the ALJ's decision to deny benefits.

Dated this 29th day of August, 2024.

David W. Christel
United States Magistrate Judge